GEORGE M. CLELAND v. FRED G. CRUMPLER, JR., HARRELL POWELL, JR., AND G. EDGAR PARKER

No. 8321SC570

(Filed 15 May 1984)

**Contracts § 18.1— amended agreement adding limiting clause to earlier partnership agreement—valid contract**

In an action in which plaintiff, as a former partner with defendants' law firm, sought an interest in the real estate partnership of the firm after withdrawing from the firm, the trial court properly found that an amended agreement which added a limiting clause vesting an interest in the real estate partnership after five years with the firm was a valid contract.

APPEAL by plaintiff from *Rousseau, Judge.* Judgment entered 30 December 1982 in Superior Court, FORSYTH County. Heard in the Court of Appeals 4 April 1984.

*Clyde C. Randolph, Jr. and David F. Tamer, for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice, by Allan R. Gitter and Stephan R. Futrell, for defendant appellee.*

BECTON, Judge.

The controlling question in this case is whether the trial court erred in ruling that an amended agreement which added a limiting clause to an earlier partnership agreement was a valid contract. We find no error and affirm.

I

The trial court sat as the trier of fact in this case and found the following facts. Plaintiff, George M. Cleland, began practicing as a partner with defendants' law firm in January, 1978, after practice as city police attorney and with other firms. Largely due to the efforts of defendant Crumpler, the senior partner, the firm had acquired a new office building to house its offices. Crumpler was the only partner to pay any cash toward the purchase. The partners agreed orally to set up a separate real estate partnership to own and manage the building. Since the firm had experienced problems with employee turnover, Crumpler offered to give the others an interest in the real estate partnership which would vest after five years with the firm. A written agreement was signed in December 1977 by all the partners, including plaintiff. The written agreement was prepared by an associate who had not attended the partnership meeting. The written agreement provided that upon the death, withdrawal or expulsion of one of the partners, his share would be appraised and paid out, *without the mention of a five-year vesting period.* In the following months, the partners discussed the correction of the writing from time to time, without taking action.

On 4 October 1978, after a criminal case in which he was defense counsel had been voluntarily dismissed by the State, plaintiff handed two bills to the arresting officer which the defendant's father had handed to him. These later turned out to be $100 bills. On 8 October 1978, plaintiff and the other partners signed a revised partnership agreement, which contained only one new provision. This required five years' service before payment of any distributive share from the partnership in excess of actual cash contributions (plus ten percent of such contributions). On 9 October 1978 a bondsman informed plaintiff that the district attorney had commenced an investigation of the alleged bribe involving the two bills. Plaintiff withdrew from the firm after consulting with the other members of the firm that day. There-

after, in accordance with the amended agreement, defendants refused to pay plaintiff any share from the real estate partnership.

## II

Since the trial court found the facts, its findings are conclusive on appeal if supported by competent evidence. *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 189 (1980). Plaintiff excepts only to the finding that Crumpler discussed the five-year rule with the other partners before the first writing was executed. Plaintiff offered no evidence contradicting this finding, and various other members of the partnership testified that such conversations did take place. Defendants also introduced substantial corroborative circumstantial evidence, from a bank loan officer, the remodeler of the building, and a firm secretary. This evidence amply sufficed to support the finding. *Id.* The credibility of defendants' evidence is the real issue plaintiff attempts to present. That issue has been settled by the trial court, however, and we cannot disturb its result. Review of the record as a whole indicates that the trial court's other findings also have evidentiary support and are consequently binding.

## III

Thus the only remaining question is whether the trial court's findings support its conclusions of law. The crucial conclusion is that the amended agreement constituted a valid contract. Plaintiff contends that no valid consideration supported the amended agreement and therefore the only valid agreement is the earlier one.

As discussed above, the trial court properly found that the five-year rule was discussed as part of the partnership before signing, and it also found that further discussions took place regarding "correction" of the first writing to reflect the oral agreement. It is well established that courts have equitable power to grant reformation of a contract when the writing does not represent the true agreement between the parties, including situations in which the writing omits stipulated provisions. *Northwestern Mut. Ins. Co. v. Hylton*, 7 N.C. App. 244, 172 S.E. 2d 226, *cert. denied*, 276 N.C. 497, --- S.E. 2d --- (1970) (attachment of wrong rider to policy corrected); *Williams v. Greensboro*

---

---

*Fire Ins. Co.*, 209 N.C. 765, 185 S.E. 21 (1936) (allowing reformation for mutual mistake when named insured known to be dead at issuance); *see generally* 13 S. Williston, *The Law of Contracts* §§ 1549- 1549A (3d ed. 1970). The cases deal uniformly with judicial reformation of a single writing, but the same logic compels judicial recognition, upon sufficient evidence, that a second writing corrects mutual mistake(s) of omission in an earlier writing. Therefore, the trial court properly concluded that the amended agreement constituted a valid contract. Under these circumstances, the existence of consideration at the time of the second signing becomes irrelevant.

## IV

Plaintiff also takes issue with the trial court's conclusion that defendants did not breach a fiduciary duty to plaintiff. Since the alleged breach involved inducing plaintiff to sign the amended agreement, and since we have already affirmed the trial court's ruling that the amended agreement merely corrected the writing to reflect the true agreement, which predated the alleged breach, we fail to see how any breach of fiduciary duty could have occurred. The same logic applies to plaintiff's allegations of actual fraud. This assignment is therefore overruled, since no fiduciary duty was breached at the time of the oral argument, and the second signing merely memorialized that earlier agreement.

## V

We conclude that the findings of fact are supported by the evidence, and they in turn support the conclusions of law. The judgment appealed from is therefore

Affirmed.

Judges WEBB and BRASWELL concur.